UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PHILIP CALDAROLA,

                              Petitioner,

        - *against* -

MICHAEL CAPRA,

                              Respondent.

12 Civ. 6133(ER)(PED)

**REPORT AND
RECOMMENDATION**

TO:   THE HONORABLE EDGARDO RAMOS,
        UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

Philip Caldarola ("Petitioner"), proceeding *pro se*, seeks a federal writ of *habeas corpus* pursuant to 28 U.S.C. § 2254.  On April 5, 2005, Petitioner was convicted after a trial by jury in Westchester County Court and sentenced to a total aggregate term of fifteen years imprisonment (Zambelli, J.).  Currently before this Court is Respondent's motion to dismiss the petition as time-barred.  (Dkt. 12.)  The matter comes before me pursuant to an Order of Reference dated September 26, 2012.  (Dkt. 4.)  For the reasons set forth below, I respectfully recommend that Respondent's motion be **GRANTED** and the petition **DISMISSED**.

## II. BACKGROUND

A.      **State Court Proceedings**

1.      ***The Crimes, Jury Trial, Conviction, and Sentence***[1]

On February 19, 2004, Anthony Charles ("Charles") was shot and killed during an attempt by Charles and another individual to rob Petitioner of drugs and money.  (*See* Resp't's

---

[1] Because I conclude that the petition is time-barred, I provide only summary descriptions of the underlying crimes and state court proceedings.

Aff. in Supp. of Mot. to Dismiss Pet. for Writ of Habeas Corpus ("Resp't's Aff."), at 1 (Dkt. 13); Resp't's Affirm. in Opp'n to Pet'r's First § 440.10 Mot., at 2 (attached to Resp't's Aff., at Ex. 4).[2]) Earlier, the men agreed to purchase drugs from Petitioner. They eventually met in Yonkers where Petitioner and Charles entered a building located at 100 Livingston Avenue. Witnesses then heard a gunshot and saw Charles run out of the building and collapse on the ground. (See Resp't's Affirm. in Opp'n to Pet'r's First § 440.10 Mot., at 2-3.) He was later pronounced dead and an autopsy revealed that the cause of death was a single gunshot wound to the chest from a .380 caliber gun. (See id. at 6-7.) Witnesses, including Jessica Johnson ("Johnson"), Petitioner's friend who lived in an apartment at 100 Livingston Avenue, saw Petitioner wearing a distinctive blue and white checkered jacket that night, both prior to and immediately after the shooting. (See id. at 3-5.) Approximately one hour after the shooting, Johnson saw Petitioner again, this time without the jacket. (See id. at 8.) Petitioner turned himself into police approximately one week after the shooting. The jacket was never recovered. (See id. at 10-11.)

Petitioner retained two attorneys who presented a theory of self-defense at trial. Counsel argued that Charles was shot during a struggle with Charles's own–not Petitioner's–weapon. (See id. at 14.) The jury returned a verdict acquitting Petitioner of manslaughter in the first degree, but convicting him of: criminal possession of a weapon in the second degree, in violation of New York Penal Law § 265.03; criminal possession of a weapon in the third degree, in violation of New York Penal Law § 265.02; and tampering with physical evidence, in violation of New York Penal Law § 215.40.[3] Petitioner was sentenced on April 5, 2005 to a determinate

---

[2] All exhibits cited herein are attached to Respondent's Affidavit.

[3] The tampering conviction related to Petitioner's concealment or destruction of the jacket. (See Resp't's Affirm. in Opp'n to Pet'r's First § 440.10 Mot., at 10 n.4.)

term of fifteen years imprisonment, plus a five-year period of post-release supervision, on the

second-degree weapons conviction; a concurrent, determinate term of seven years imprisonment,

plus a three-year period of post-release supervision, on the third-degree weapons conviction; and

a concurrent, indeterminate term of one and one-third to four years imprisonment on the

tampering conviction.  (See Resp't's Aff. at 1-2.)  Petitioner is currently in custody and serving

this sentence.

> ### 2.   _Direct Appeal_

Through appellate counsel, Petitioner timely appealed his conviction to the New York

State Appellate Division, Second Department.[4]  Respondent maintains that the following claims

were raised:[5]

(1)   "the trial court erred by refusing to charge the jury with the defense of temporary and innocent possession of a weapon;"

(2)   "the court's refusal to charge the defense deprived defendant of the opportunity to rebut the statutory presumption regarding the crime of second degree criminal possession of a weapon; the conviction was not supported by legally sufficient evidence; it was against the weight of the evidence;"

(3)   "the trial court erred in charging the jury on the elements of tampering with physical evidence; the conviction was not supported by legally sufficient evidence;"

(4)   "a writing was improperly received into evidence as an admission;"

(5)   "a prosecution theory not based on the evidence deprived defendant of a fair trial;"

(6)   "the trial court's instructions regarding the use of prior inconsistent statements were erroneous;"

(7)   "material information was omitted from the search warrant application now necessitating a suppression hearing;"

---

[4] Respondent maintains that Petitioner also moved to file a supplemental _pro se_ brief, and that the Second Department denied that application on April 25, 2007.  (See Resp't's Aff., at 3.)  Copies of the brief and the decision have not been provided.  However, those documents are unnecessary to decide the instant motion.

[5] A copy of the appellate brief has not been provided.  The document, however, is unnecessary to decide the instant motion.

(8)     "defendant was deprived of a fair opportunity to conduct *voir dire*;"
(9)     "the cumulative effect of trial errors deprived defendant of a fair trial;" and
(10)    "defendant's sentence was unduly harsh."

(Id. at 2.)  The Appellate Division affirmed the conviction on November 7, 2007.  People v. Caldarola, 845 N.Y.S.2d 117 (App. Div. 2007).  The New York Court of Appeals denied leave to appeal on July 8, 2008.  People v. Caldarola, 10 N.Y.3d 957 (2008).  Petitioner did not seek a writ of *certiorari* to the United States Supreme Court.  (See Pet. ¶ 10(g) (Dkt.  1).)

### 3.    *First Motion to Vacate Judgment of Conviction*

Proceeding *pro se*, Petitioner filed his first motion seeking to vacate the judgment of his conviction pursuant to Section 440 of the New York Criminal Procedure Law on March 5, 2009.[6]  He raised the following claims:

(1)     Petitioner was denied his "right to effective assistance of counsel and due process," for counsels' "failure to research, prepare or adequately present defense."  (Appellant's Mot. Pursuant to CPL § 440.10 ("Pet'r's First 440 Mot."), at 7, 8 (Ex. 3).)

(2)     Petitioner was denied his "right to effective assistance of counsel and due process," for the "[f]ailure of counsel to appropriately request or preserve the videotape surveillance of Defendant's residence."  (Id. at 7, 15.)

(3)     Petitioner was denied his "right to effective assistance of counsel and due process," for counsels' failure "to object to or raise issue of illegal pretrial cell search dating December 29, 2004, two weeks before trial."  (Id. at 7, 20.)

---

[6] Petitioner's *pro se* motion is dated March 5, 2009.  The Court accepts this date as the date it was filed pursuant to the "prison mailbox rule."  See Noble v. Kelly, 246 F.3d 93, 97 (2d Cir. 2001) (per curiam) (citing Houston v. Lack, 487 U.S. 266 (1988)) (under the prison mailbox rule, an application by a *pro se* prisoner is considered filed for purposes of statutory limitations periods on the day the prisoner hands it to prison officials for mailing to the clerk of the court); see also Hardy v. Conway, 162 F. App'x 61, 62-63 (2d Cir. 2006) (recognizing that where the date that a prisoner handed an application to prison officials for mailing is unavailable, district courts in this circuit have considered the document filed on the date it was signed by the prisoner); Fernandez v. Artuz, 402 F.3d 111, 112 (2d Cir. 2005) (federal prison mailbox rule applies when federal court must determine, under AEDPA, the date that a state application was "properly filed").  I have applied this convention to determine the filing date of all relevant *pro se* submissions discussed herein.

4

(4)     Petitioner was denied his "right to effective assistance of counsel and due process," for "[c]ounsel's decision not to call any witnesses." (Id. at 7, 24.)

(5)     Petitioner was denied his "right to effective assistance of counsel and due process," for counsels' failure "to appropriately object at numerous instances, and Defendant's right to a fair trial was, in result, invaded influentially." (Id. at 7, 28.)

(6)     Petitioner was denied his "right to effective assistance of counsel and due process," for counsels' "failure to address Jencks, Giglio, or Brady violations." (Id. at 7, 31.)

The Westchester County Court denied the motion on August 18, 2009. (Ex. 5.) The Second Department denied leave to appeal on November 5, 2009. (Ex. 6.) Petitioner then moved for re-argument of the Second Department's decision denying him leave to appeal. The Second Department denied this request on January 22, 2010. (Ex. 7.) Petitioner appealed this decision. The New York Court of Appeals dismissed that appeal on March 11, 2010.[7] (Ex. 8.)

### 4.     **Error Coram Nobis** *Petition*

By *pro se* application dated April 29, 2010, Petitioner sought a writ of *error coram nobis* from the Second Department. He raised the following claims in his petition:

(1)     "[Appellate] counsel failed to pursue the wishes and best interests of Defendant, pursuing weak or frivolous arguments rather than meritorious existing claims and claims proposed by Defendant, rendering his assistance ultimately ineffective and unmeaningful." (Pet. for Writ of Error Coram Nobis ("Error Coram Nobis Mem."), at 14 (Ex. 9).)

(2)     "[Appellate] counsel failed to conduct adequate legal research and ignored correspondence of Defendant, forming a misinformed claim, and did not act as the Defendant's advocate until the Court of Appeals level, rendering himself ineffective in foundation." (Id. at 41.)

(3)     "Appellate counsel raised mainly frivolous claims, while non-frivolous meritorious issues existed and were made known to him." (Id. at 47.)

---

[7] Specifically, the decision dismissed the application "because the order sought to be appealed is not appealable under Criminal Procedure Law, section 450.90(1)." (Ex. 8.)

The Second Department denied the application on September 28, 2010. <u>People v. Caldarola</u>, 907 N.Y.S.2d 881 (App. Div. 2010). Petitioner did not seek leave from the New York Court of Appeals to appeal this decision. (<u>See</u> Pet. ¶ 12(b);[8] Resp't's Aff., at 5.)

### 5. *Second Motion to Vacate Judgment of Conviction*

Proceeding *pro se*, Petitioner filed a second motion seeking to vacate the judgment of his conviction pursuant to Section 440 of the New York Criminal Procedure Law on November 15, 2010. He raised one new claim therein:

> (1)   ineffective assistance of counsel when counsel "related" "false representations of plea offers" to Petitioner, which "ultimately convic[ed Petitioner] to proceed to trial and with no possible chances of acquittal of the charges at issue," (Mot. by Appellant Pursuant to C.P.L. § 440.10 ("Pet'r's 2d 440 Mot."), at 1 (Ex. 12).)

In addition, Petitioner "renew[ed] his previous C.P.L. § 440.10(1)(h) ineffective assistance of counsel" claims that were raised in his first Section 440 motion. (<u>Id.</u> at 7; <u>see id.</u> at 7-16.) The Westchester County Court denied the motion on April 28, 2011. (Ex. 14.) The Second Department denied leave to appeal on April 12, 2012. (Ex. 15.) Petitioner then appealed this

---

[8] Petitioner states that he did not seek leave to appeal this decision because:

> It was futile to continue appealing the application for a Writ of Error Coram Nobis as it was premised entirely on the merits of the first [N.Y. Crim. Proc. Law § 440.10] motion which was denied. The threshold is much higher on this application, as Petitioner must prove that trial counsel was constitutionally ineffective and that appellate counsel was in addition. Relief sought by Petitioner was inavailable [*sic*], by this avenue, and at the time of the Appellate Division denial, Petitioner had the material ready to construct a second CPL 440.10 (renewed) motion that could demand the sort of relief that Petitioner was seeking.

(Pet. ¶ 12(d).)

decision to the New York Court of Appeals.  The New York Court of Appeals dismissed the

application on June 29, 2010.[9]  (Ex. 16.)

**B.**     **Federal Court Proceedings**

By *pro se* application dated August 7, 2012, Petitioner seeks a federal writ of *habeas*

*corpus*.  He raises the following claims in his petition:

(1)     "Ineffective Assistance of Counsel . . . Regarding Pre-trial Advice and False
Representations of Plea Offers." (Br. attached to Pet. Under 28 USC § 2254
for Writ of Habeas Corpus By a Person in State Custody ("Pet'r's Mem."),
at 1 (attached to Pet. (Dkt. 1)).)

(2)     "Ineffective Assistance of Counsel Deprived Petitioner of Fair Judicial
Proceedings (Const. Amend. 14), When There Was a Failure to Properly
Preserve or Request Potentially Exculpatory Videotape Surveillance
Evidence Permitting Government Misconduct to Go Unscrutinized." (id. at
36.)

(3)     "Petitioner was deprived effective assistance of counsel (Const. Amend. 6),
when prejudicial and inadmissible testimony injected into trial violated
Petitioner's due process rights (const. Amend. 5) and ultimately deprived him
of a fair trial (Const. Amend. 14).  These constitutional violations are also
challenged individually, without regard for counsel's deficiencies." (Id. at
51.)

(4)     "Petitioner was deprived the effective assistance of counsel, trial and
appellate, when the sentencing procedure violated the due process clause
with the admissions of fruit-of-a-poisonous-tree and a victim impact
statement, after the jury concluded the decedent was the assailant, causing
improper judicial fact-finding." (Id. at 69.)

(5)     "Ineffective assistance of counsel ensued when counsel failed to preserve
rights of Petitioner and record potential corruption/misconduct related to the
investigation, where Petitioner's pre-trial cell was searched by Yonkers
detectives, seizing all legal preparation, inter alia, two weeks prior to trial."
(Id. at 78.)

(6)     "Petitioner was deprived the effective assistance of appellate counsel when
counsel failed to pursue his wished and best interests, pursuing weak or
frivolous arguments rather than meritorious existing claims and claims
proposed by Petitioner, rendering his assistance ultimately constitutionally
ineffective." (Id. at 83.)

---

[9] Specifically, the decision dismissed the application "because the order sought to be
appealed from is not appealable under CPL 450.90(1)." (Ex. 16.)

(7)     "Petitioner was deprived the effective assistance of trial counsel and the cumulative pattern of deficiencies and omissions rises to constitutional levels, as the outcome of the proceedings would have been different if he had been provided with minimally competent assistance." (Id. at 90.)

Respondent filed its motion to dismiss the petition as time-barred on January 18, 2013.

Petitioner filed his opposition to the motion on February 5, 2013. (See Pet'r's Affirm. in Opp'n to Resp't's Mot. to Dismiss Pet. for Writ of Habeas Corpus ("Pet'r's Affirm.") (Dkt. 15); Pet'r's Aff. in Supp. of Affirm. in Opp'n to Mot. to Dismiss ("Pet'r's Aff.") (Dkt. 16).) Respondent replied by letter dated February 13, 2013. (Dkt. 17.)

### III. DISCUSSION

### A.     Applicable Law

"Habeas review is an extraordinary remedy." Bousley v. United States, 523 U.S. 614, 621 (1998) (citing Reed v. Farley, 512 U.S. 339, 354 (1994)).  Before a federal district court may review the merits of a state criminal judgment in a *habeas corpus* action, the court must first determine whether the petitioner has complied with the procedural requirements set forth by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1220 (Apr. 24, 1996).

Under AEDPA, a federal *habeas corpus* petition is subject to a strict, one-year statute of limitations. See 28 U.S.C. § 2244(d). The statute provides four different potential starting points for the limitations period, and specifies that the latest of these shall apply. See id. § 2244(d)(1). Under the statute, the limitation period is tolled only during the pendency of a properly filed application for State post-conviction relief, or other collateral review, with respect to the judgment to be challenged by the petition. See id. § 2244(d)(2). The statute reads as follows:

(d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of–

    (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

    (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

    (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

    (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(d)(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Id. § 2244(d).

The one-year limitation period is subject to equitable tolling, which is warranted where a petitioner shows "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way' and prevented timely filing." Holland v. Florida, 130 S. Ct. 2549, 2262 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). "The term 'extraordinary' refers not to the uniqueness of a party's circumstances, but rather to the severity of the obstacle impeding compliance with a limitations period." Harper v. Ercole, 648 F.3d 132, 137 (2d Cir. 2011). "To secure equitable tolling, it is not enough for a party to show that he experienced extraordinary circumstances.  He must further demonstrate that those circumstances caused him to miss the original filing deadline." Id. Finally, "[c]onsistent with the maxim that equity aids the vigilant, a petitioner seeking equitable tolling of AEDPA's limitations period must demonstrate that he acted with reasonable diligence throughout the period he seeks to toll." Id. at 138 (internal quotation marks and citations omitted); see also Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000) (the applicant for equitable tolling must

"demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances").

## B.    The Petition is Untimely[10]

### 1.    *Starting Point*

"[A] petitioner's 'conviction be[comes] final for [AEDPA] purposes when his time to seek direct review in the United States Supreme Court by writ of certiorari expire[s].'" Williams v. Artuz, 237 F.3d 147, 150 (2d Cir. 2001) (quoting Ross v. Artuz, 150 F.3d 97, 98 (2d Cir. 1998)).  Here, the New York Court of Appeals denied Petitioner leave to appeal on July 8, 2008. Petitioner's deadline to file for a writ of *certiorari* in the United States Supreme Court fell ninety days later, on October 6, 2008.[11]  28 U.S.C. § 2101(d); Sup. Ct. R. 13(1).   Under Section 2244(d)(1)(A), the AEDPA limitations period runs from that date unless a later starting point applies.

### i.    Section 2244(d)(1)(D)

Petitioner contends that a later date applies under Section 2244(d)(1)(D), which fixes as a starting point "the date on which the factual predicate of the . . . claims presented could have been discovered through the exercise of due diligence." (See Pet. ¶ 14; Pet'r's Affirm., at 1-5 (unpaginated); see also 28 U.S.C. § 2244(d)(1)(D).)  Specifically, he states that the claims raised

---

[10] A timeline which summarizes my analysis of the filing deadline and the applicable tolling periods is attached to this Report and Recommendation as an appendix.

[11] Petitioner's memorandum in support of his *habeas* petition incorrectly states that this date was October 8, 2008.  (See Pet'r's Mem., at *xvii*.)

in his *habeas* petition are "based solely on newly discovered evidence" relating to "ineffective assistance of counsel," and "not . . . on matters from direct review." (Pet. ¶ 14.) Accordingly, he argues that "the factual predicate was developed, to start, with the first CPL 440.10 motion." (Id.) In addition, Petitioner refers to a certain letter that his attorney sent to him in February 2006 and that his father rediscovered in 2010. He contends that the information contained in this letter was–at least in part–his impetus for filing his second Section 440 motion. (See generally Pet.; Pet'r's 2d 440 Mot.) He argues that as such, "[t]he factual predicate" for the claims raised in "the second [Section 440] motion is 2010," *i.e.*, the date of that motion's filing. (Pet. ¶ 14.) Respondent disagrees with Petitioner's contention that the claims are based on newly discovered evidence. (See Resp't's Mem. of Law in Supp. of Mot. to Dismiss Pet. for Writ of Habeas Corpus ("Resp't's Mem."), at 8-9 (Dkt. 14).) I agree with Respondent.

"The determination of the date on which the factual predicate for a habeas claim is first discoverable is a 'fact-specific' inquiry which requires a district court to analyze the factual bases of each claim and to determine when the facts underlying the claim were known, or could with due diligence have been discovered." Rivas v. Fischer, 687 F.3d 514, 534 (2d Cir. 2012). The Second Circuit recently held that the term "factual predicate" relates only to "'vital facts' underlying the claim," and explained that those "facts vital to a habeas claim are those without which the claim would necessarily be dismissed under Rule 4 of the Rules Governing § 2254 Cases in the United States District Courts . . . or Rule 12(b)(6) of the Federal Rules of Civil Procedure." Id. at 535 (quoting McAleese v. Brennan, 483 F.3d 206, 214 (3d Cir. 2007)). Accordingly, the Second Circuit held that,

> [I]f new information is discovered that merely supports or strengthens a claim that could have been properly stated without the discovery, that information is not a 'factual predicate' for purposes of triggering the statute of limitations under §

11

> 2244(d)(1)(D).  Furthermore, it should go without saying that a factual predicate must consist of *facts*.  Conclusions drawn from preexisting facts, even if the conclusions are themselves new, are not factual predicates for a claim.

Id. (emphasis in original) (internal citations omitted); see also id. (quoting McAleese, 483 F.3d at 214 and noting that a petitioner may "'confuse[ ] the facts that make up his claims with evidence that might support his claims'"); id. (emphasis added) (quoting Escamilla v. Jungwirth, 426 F.3d 868, 871 (7th Cir. 2005) and noting that "'Section 2244(d)(1)(D) does not restart the time when corroborating evidence becomes *available*").  Finally, the Second Circuit requires that, in order to determine if information relied upon as newly discovered could have, in fact, been discovered through the exercise of due diligence, a district court's "proper task . . . is to determine when a duly diligent person in [the] petitioner's circumstances would have discovered" that information.  Wims v. United States, 225 F.3d 186, 190 (2d Cir. 2000).

### a.  *Factual Predicate For Petitioner's First Section 440 Motion*

Liberally read, Petitioner asserts that at least some of his *habeas* claims are based on information that he only discovered prior to the filing of his first Section 440 motion.  See Haines v. Kemer, 404 U.S. 519, 520 (1972) (per curiam) (*pro se* allegations are held "to less stringent standards than formal pleadings drafted by lawyers"); Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (internal quotation marks and citation omitted) (application submitted by *pro se* plaintiff "must be read liberally and should be interpreted to raise the strongest arguments that [it] suggests").  Accordingly, Petitioner argues that the date on which the "factual predicate" of his claims was discovered–and thus the starting point under Section 2244(d)(1)(D)–is either: (a) the date that these facts were discovered, or in the alternative, (b) the date that his first Section 440 motion raising those claims was filed.  I disagree.  As discussed below, Petitioner

12

knew of the facts underlying each of the six claims raised in his first Section 440 motion prior to, or at the time of, his trial.

First, to the extent Petitioner argues that the starting point is the date that he filed his first Section 440 motion, that argument misinterprets Section 2244(d)(1)(D). Under that provision, the starting point for AEDPA's one-year limitations period is "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." § 2244(d)(1)(D). Thus, a starting point fixed under this subsection is the date that the facts supporting a claim were (or could have been) discovered, not the later date when a claim based upon the discovered facts was presented to a court.

Next, it is clear that the claims Petitioner raised in his first Section 440 motion do not involve newly-discovered facts supporting a delayed starting point under Section 2244(d)(1)(D). The first claim in the motion argued that Petitioner's attorneys were ineffective for failing "to research, prepare or adequately present" a valid defense. (Pet'r's First 440 Mot., at 8.) Specifically, Petitioner argued that counsel misunderstood the elements of the affirmative defense of innocent possession of a weapon. He also argued that counsel did not understand that defendant bears both the burdens of production and persuasion with respect to an affirmative defense. (See id. at 8-14.) It is clear that the factual predicate of this claim–*i.e.*, the arguments that counsel made to the court and the evidence they introduced at trial–was known to Petitioner at the time of trial. That Petitioner may later have concluded that counsel's performance was deficient does not support application of Section 2244(d)(1)(D). See Rivas, 687 F.3d at 535 ("Conclusions drawn from preexisting facts, even if the conclusions are themselves new, are not factual predicates for a claim.").

13

The second claim raised in Petitioner's first Section 440 motion argued that counsel were ineffective for failing "to appropriately request or preserve the videotape surveillance of Defendant's residence [at] . . . 506 South Broadway apartment building, Yonkers, N.Y., where he dwelled with girlfriend." (Pet'r's First 440 Mot., at 15.)  Petitioner claims that the video would have been exculpatory because it would have shown, among other things, that the jacket he wore that night did not have bullet holes in it.  Since Petitioner claims that his attorneys "were informed that the videotape [would] show no holes[,]" (id. at 19), it is apparent that Petitioner knew about this source of evidence–and his attorneys' failure to obtain it–at the time of trial. Although Petitioner apparently attempted to support this claim by submitting affidavits which were subsequently obtained from one of his attorneys and from representatives of the apartment building, (see Pet. ¶ 13 (Ground 2)), such information "merely supports or strengthens a claim" that could have been stated without these materials.  Rivas, 687 F.3d at 535.  Accordingly, discovery of this supporting information does not justify a later AEDPA starting point under Section 2244(d)(1)(D).

The remaining claims raised by Petitioner in his first Section 440 motion likewise do not justify a later starting point under Section 2244(d)(1)(D).  Petitioner argued in his third claim that counsel were deficient for failing "to object to or raise issue of illegal pretrial cell search dating December 29, 2004, two weeks before trial." (Pet'r's First 440 Mot., at 20.)  It is clear that the predicate fact underlying this claim–the search–was known to Petitioner in advance of his trial.  The fourth claim argued that Petitioner's counsel were deficient for failing "to call any witnesses" at trial, (id. at 24), the fifth claim argued that counsel were deficient for failing "to appropriately object at numerous instances" at trial, (id. at 28), and the sixth claim argued that counsel were deficient for failing "to address Jencks, Giglio, or Brady violations" at trial, (id. at

14

31.[12])  It is clear that Petitioner knew of the facts underlying each of these claims at the time of his trial.  His subsequent decision to raise ineffective assistance of counsel claims based on acts or omissions he observed at trial does not trigger the statute of limitations starting point provided by Section 2244(d)(1)(D).  See Rivas, 687 F.3d at 535.

### b.    *Factual Predicate for Petitioner's Second Section 440 Motion*

Liberally read, Petitioner asserts that at least some of his *habeas* claims are based on information that he only discovered prior to the filing of his second Section 440 motion. Specifically, Petitioner maintains that sometime in 2010, his father discovered a copy of a letter that Petitioner's attorney sent to Petitioner in February 2006.  He argues that the information contained in that 2006 letter prompted him to raise the claims that were identified in his second Section 440 motion.  Accordingly, Petitioner argues that the starting point under Section 2244(d)(1)(D) is either: (a) the date in 2010 when he rediscovered the letter, or (b) the date when he filed his second 440 motion.  I disagree.  As discussed below, Petitioner knew of the facts underlying each of the claims raised in his second 440 motion on dates earlier than he contends.

Once again, Petitioner misconstrues Section 2244(d)(1)(D) insofar as he argues that the appropriate starting point is the date that he filed his second Section 440 motion.  Under that provision, the starting point for AEDPA's one-year limitations period is "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."  § 2244(d)(1)(D).  Thus, a starting point fixed under this subsection is

---

[12] Petitioner's sixth claim appears to refer to the Jencks Act, 18 U.S.C. § 3500, Giglio v. United States, 405 U.S. 150 (1972), and Brady v. Maryland, 373 U.S. 83 (1963).  Specifically, he argued that counsel were deficient for failing to object when the prosecution elicited testimony from Johnson that differed from the substance of her pretrial statement.  He also argued that the prosecution unlawfully withheld from pretrial disclosure this change in Johnson's testimony.

the date that the facts supporting a claim were (or could have been) discovered, not the later date when a claim based upon the discovered facts was presented to a court.

Next, it is clear that the claims Petitioner raised in his second Section 440 motion do not trigger the starting point provided by Section 2244(d)(1)(D). The first claim in that motion argued that counsel were ineffective for failing to inform Petitioner that the prosecution offered him a six-year plea bargain, and that this six-year offer remained on the table until trial. (See Pet'r's 2d 440 Mot., at 1-2.) Petitioner claims that he only discovered that he was misinformed about this available plea offer after his father discovered, in 2010, a copy of a letter from counsel to Petitioner dated February 2006.[13] Petitioner maintains that his own original copy of that letter was among items lost or misplaced "from 2007-2010" while he was "transport[ed] . . . from general population to the Special Housing Unit (SHU) [because] . . . the State pack[ed] his property, rather than [Petitioner] himself." (Id. at 1.)

I disagree. The record reflects that a six-year plea offer was discussed in Petitioner's presence during a pretrial conference held on September 10, 2004. (Ex. 18.) That Petitioner more recently, and in retrospect, concluded that this offer was more favorable than was his decision to proceed to trial—and to proceed to trial on a theory of defense that he also more recently determined was legally unsound—does not trigger the statute of limitations provision provided by Section 2244(d)(1)(D). See Rivas, 687 F.3d at 535. More importantly, Petitioner received this letter from counsel *in 2006*. Even if the substance of the letter included new information, the fact that the letter was lost sometime between 2007 and 2010, rediscovered after Petitioner's father located a copy, and then presented in support of Petitioner's second motion to

---

[13] A copy of this letter was not provided to the Court.

16

vacate his conviction, does not show that Petitioner acted with due diligence when he first received the letter in 2006.  See Wims, 225 F.3d at 186; see also, e.g., Haqq v. Yelich, No. 12 Civ. 2359(JFB), 2012 WL 5879121, at *4 (E.D.N.Y. Nov. 20, 2012) (quoting Duamutef v. Mazzuca, 01 Civ. 2553(WHP)(GWG), 2002 WL 413812, at *9 (S.D.N.Y. Mar. 15, 2002) (Report & Recommendation)) ("Under Section 2244(d)(1)(D), if the evidence could have been obtained earlier, 'the date when the evidence was actually obtained has no effect on the AEDPA limitation period.'").

Petitioner's second Section 440 motion also "renews" the same claims that were raised in his first 440 motion.  (Pet'r's 2d 440 Mot., at 7.)  For the reasons discussed above, those claims do not rely on vital facts that could not have been discovered earlier through the exercise of due diligence.  Accordingly, the starting point provided by Section 2244(d)(1)(D) is not justified for these claims.

### ii.     Section 2244(d)(1)(B)

Petitioner maintains in papers filed in opposition to Respondent's motion to dismiss that he was given limited access to the prison law library and that this factor contributed to his delay in filing his federal *habeas* petition.  (See Pet'r's Aff. ¶¶ 2-3, 5.)  This contention can be liberally construed as an argument that a later starting point for the AEDPA limitations period should be fixed pursuant to Section 2244(d)(1)(B).  However, any such restriction in Petitioner's access to the law library does not trigger application of Section 2244(d)(1)(B).

Section 2244(d)(1)(B) provides that AEDPA's one-year statute of limitation runs from "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action."  § 2244(d)(1)(B).  Accordingly, "[i]n order to invoke Section

17

2244(d)(1)(B), a petitioner must show that (1) he was prevented from filing a petition (2) by

State action (3) in violation of the Constitution or federal law." Rush v. Lempke, No. 09 Civ.

3464(JFB), 2011 WL 477807, at *9 (E.D.N.Y. Feb. 2, 2011), aff'd on other grounds by 2012

WL 4820810 (2d Cir. Oct. 11, 2012) (internal quotation marks and citation omitted).

   Application of Section 2244(d)(1)(B) in this case is unwarranted.  Petitioner provides no

factual evidence in support of his assertion that he was denied access to the law library, much

less any evidence that this allegedly limited access–in which he was allowed at least some visits

to the law library–amounted to a deprivation of his constitutional rights.  Petitioner's failure to

provide this evidence forecloses application of Section 2244(d)(1)(B).  See Williams v. Ercole,

486 F. App'x 208, 210-11 (2d Cir. 2012), cert. denied, 133 S. Ct. 635 (2012) (Section

2244(d)(1)(B) relief not warranted where petitioner failed to produce evidence in support of his

assertion that he was deprived access to the library in violation of his constitutional right of

access to the courts); Bush v. Lantz, No. 06 Civ. 410(RNC), 2009 WL 522940, at *2 (D. Conn.

Mar. 2, 2009) ("In the absence of any indication [apart from his own affidavit] that [petitioner]

tried to obtain his legal papers or library materials and was prevented from doing so by a state-

created impediment, he is not entitled to relief under § 2244(d)(1)(B).").  Moreover, Petitioner's

apparent ability to visit the library on at least some occasions weakens his argument that any

state-created impediment actually existed.  See, e.g., Patel v. D. Martuscello, No. 10 Civ.

4804(CBA), 2011 WL 703943, at *2 (E.D.N.Y. Feb. 16, 2011) (citing § 2244(d)(1)(B)) (where

"petitioner describe[d] multiple opportunities to visit the library" throughout the statutory

limitations period, his argument that he had "limited access to a law library" failed to

demonstrate that any "state-created impediment" to filing his application actually existed in

violation of the Constitution or federal law).  I also note that Petitioner's *habeas* application

18

raises claims "virtually identical" to claims that were raised (and researched) in his previous

state court filings.  Black v. Stinson, No. 99 Civ. 1225(RR), 1999 WL 441471, at *2 (E.D.N.Y.

May 26, 1999).  Petitioner's allegedly restricted access to the law library should therefore not

have prevented his timely *habeas* filing.  See, e.g., id. ("Although [petitioner] contends he had

difficulty gaining access to the law library, any claim of resulting delay [and entitlement to

application of Section 2244(d)(1)(B)] is undercut by the fact that [petitioner]'s habeas petition

raises allegations virtually identical to those raised in his § 440 petition.").

### iii.   Conclusion as to Starting Point

Accordingly, I conclude–and respectfully recommend that your Honor also conclude–that

the appropriate starting point for purposes of AEDPA's limitations period, pursuant to Section

2244(d)(1)(A), is October 6, 2008, the date Petitioner's judgment of conviction became final.

### 2.   *Tolling*

### i.   Statutory Tolling Under Section 2244(d)(1)(A)

Petitioner argues that, because he has "consistently litigated" his case, his petition is

timely pursuant to Section 2244(d)(2).  (Pet. ¶ 14 (Reason  2)).  That statute tolls the AEDPA

limitations period while "a properly filed application for State post-conviction or other collateral

review . . . is pending[.]"  I analyze the relevant tolling periods below.

### a.   The First Statutory Tolling Period

Applying the prison mailbox rule, the statute ran for 149 days before Petitioner filed his

first Section 440 motion on March 5, 2009.[14]  It is well-established that Section 2244(d)(2)

---

[14] Although Respondent applies the prison mailbox rule in its calculations, Petitioner apparently does not.  In his memorandum in support of the petition, Petitioner has also incorrectly (and to his detriment) calculated the number of days the statute ran.  (See Pet'r's Mem., at *xvii-xviii*.)  Because Petitioner is proceeding *pro se*, I have recalculated these periods in

applies to motions seeking to vacate judgments of conviction pursuant to Section 440 of the New York Criminal Procedure Law.  See Bennett v. Artuz, 199 F.3d 116, 119-20 (2d Cir. 1999). Accordingly, the limitations period was tolled as of March 5, 2009.

The Westchester County Court denied Petitioner's first Section 440 motion on August 18, 2009.  The Second Department denied Petitioner's request for leave to appeal the denial of this motion on November 5, 2009.  Petitioner subsequently moved the Second Department for re-argument of this decision, which was denied on January 22, 2010.[15]  Petitioner thereafter sought leave to appeal the Second Department's denial of his motion for re-argument from the New York Court of Appeals.  That application was dismissed on March 11, 2010.

Respondent contends that the AEDPA period remained tolled only until January 22, 2010, the date that the Second Department denied Petitioner's motion for re-argument.  (See Resp't's Mem., at 5.)  Liberally construing the petition, Petitioner maintains that the statute remained tolled through March 11, 2010, the date that the Court of Appeals dismissed his appeal of the Second Department's denial of his motion for re-argument.[16]  (See generally Pet. ¶ 14; Pet'r's Mem.)  Respondent is correct.

"[A] state-court petition is 'pending' from the time it is first filed until finally disposed of and further appellate review is unavailable under the particular state's procedures."  Bennett, 199 F.3d at 120.  "Accordingly, the word 'pending' in § 2244(d)(2) 'cover[s]' the time between a

---

his favor.

[15] The parties do not identify the date that Petitioner moved for re-argument or provide the Court with a copy of his motion.  I assume the motion was timely filed and that the statute was therefore continuously tolled.

[16] I note that Petitioner's memorandum in support of his *habeas* stated that the statute tolled only through January 22, 2010.  (See Pet'r's Mem., at *xvii*.)

lower state court's decision and the filing of a notice of appeal to a higher state court,' but an attempt to appeal an unappealable decision does not extend the toll." <u>Smalls v. Smith</u>, No. 05 Civ. 5182(CS), 2009 WL 2902516, at *7 (S.D.N.Y. Sept. 10, 2009) (quoting <u>Carey v. Saffold</u>, 536 U.S. 214, 217 (2002) and citing <u>Hizbullahankhamon v. Walker</u>, 255 F.3d 65, 71-72 (2d Cir. 2001)).  Under New York law, an Appellate Division's decision denying leave to appeal a trial court's denial of a Section 440 motion is an unappealable decision.  <u>See id.</u> at *8.  Thus, AEDPA's statute of limitations is not tolled during the pendency of such an appeal.  However, "[c]ourts in this circuit have held that the AEDPA Limitations Period is tolled while a petitioner seeks reargument before the Appellate Division of a denial of leave to appeal a State trial court's denial of a Section 440.10 motion, because such reargument may properly be sought under New York law." <u>Id.</u>

In this case, Petitioner's motion seeking reargument of the Second Department's denial of leave to appeal the trial court's denial of his first Section 440 motion was a proper motion under New York law.  <u>See id.</u>  Accordingly, AEDPA remained tolled during the pendency of this motion, <i>i.e.</i>, through January 22, 2010.  However, the Second Department's decision denying reconsideration was an unappealable decision.  Petitioner's subsequent appeal to the Court of Appeals does not further toll the statute.  <u>See id.</u> at *7; N.Y. Crim. Proc. Law § 450.90(1).

Accordingly, AEDPA's limitations period resumed running on January 23, 2010, the day after the Second Department denied Petitioner's motion for reargument.  At that point, Petitioner had 216 days remaining to file a timely federal <i>habeas</i> petition.

### b.    <u>The Second Statutory Tolling Period</u>

The statute ran for 96 days before Petitioner filed his <i>error coram nobis</i> petition on April 29, 2010.  Like a motion to vacate a judgment of conviction pursuant to Section 440 of the New

York Criminal Procedure Law, AEDPA's statutory tolling provision applies to a properly filed *error coram nobis* petition. See, e.g., Spells v. Lee, No. 11 Civ. 1680(KAM)(JMA), 2012 WL 3027865, at *3 & n.3 (E.D.N.Y. July 23, 2012). Accordingly, the statute was tolled as of April 29, 2010.

The Second Department denied Petitioner's application on September 28, 2010. Under New York law, Petitioner had thirty days to appeal this decision. See N.Y. Crim. Proc. Law § 450.90(1). Because he could have, but did not, seek leave to appeal, AEDPA was tolled until October 28, 2010. See Sumpter v. Sears, No. 09 Civ. 689(KAM), 2012 WL 95214, at *3 (E.D.N.Y. Jan. 12, 2012) (citing Saunders v. Senkowski, 587 F.3d 543, 548 (2d Cir. 2009) (per curiam)) (AEDPA tolled during thirty-day period petitioner could have, but did not, seek leave to appeal the trial court's denial of a Section 440 motion). Accordingly, the limitations period resumed running on October 29, 2010. At that point, 120 days still remained for Petitioner to file his federal *habeas* petition.

### c.   **The Third Statutory Tolling Period**

The statute ran for 17 days before Petitioner filed his second motion to vacate the judgment of his conviction on November 15, 2010. As discussed above, the collateral motion tolled AEDPA as of that date. The trial court denied the motion on April 28, 2011 and the Second Department denied leave to appeal on April 12, 2012. Although Petitioner appealed the Second Department's decision, as discussed above, this was an unappealable decision under New York law. See N.Y. Crim. Proc. Law § 450.90(1); Smalls, 2009 WL 2902516, at *7-8. Petitioner's unsupported assertion that this appeal should toll AEDPA because he "presented novel questions of law, that should have been reviewed," (Pet'r's Mem., at *xvii-xviii*), misconstues New York's rules of procedure.

Accordingly, AEDPA remained tolled through April 12, 2012 and resumed running the following day. At that point, Petitioner had 103 days–until July 25, 2012–to file a timely federal *habeas* petition.

### ii.  **Equitable Tolling**

Petitioner's claim that his limited access to the prison law library contributed to his delay in filing his federal *habeas* petition, discussed above as a possible basis for a delayed starting point pursuant to Section 2244(d)(1)(B), can also be construed as an argument that he is entitled to equitable tolling. (See Pet'r's Aff. ¶¶ 2-3, 5.) "It is extremely rare for courts in the Second Circuit to find a state-created impediment is extraordinary enough to warrant equitable tolling." Madison v. Hulihan, No. 09 Civ. 337(DLI), 2012 WL 1004780, at *4 (E.D.N.Y. Mar. 23, 2012). For substantially the same reasons addressed above, equitable tolling is not warranted.

Petitioner's failure to provide evidence in support of his assertion that he was denied library access, along with his acknowledgment that he had at least some access to the law library, is fatal to any claim that Petitioner faced a "sever[e] . . . obstacle" warranting equitable tolling. Harper, 648 F.3d at 137 and n.4 ("[n]ormally, a party seeking equitable tolling . . . would be expected to provide corroborating evidence"); see also, e.g., Collins v. Artus, 496 F. Supp. 2d 305, 313 (S.D.N.Y. 2007) ("To establish extraordinary circumstances, a petitioner must support his allegations with evidence; he cannot rely solely on personal conclusions or assessments."); Ruiz v. Poole, 566 F. Supp. 2d 336, 341 (S.D.N.Y. 2008) (allegation by petitioner who failed "to indicate the period during which he had no access to the law library" that facility "denied him 'access for a while . . . ,' without more, is not a 'rare and exceptional circumstance' warranting equitable tolling of the AEDPA statute of limitations"). Any argument that Petitioner simply needed additional time to research and develop his claims is insufficient to

23

warrant an equitable toll.  See Ruiz, 566 F. Supp. 2d at 341 ("Ignorance of the law does not

constitute a rare and extraordinary circumstance that would merit equitable tolling.").  Moreover,

because the claims raised in the *habeas* petition are virtually the same as those raised in

Petitioner's state court filings, Petitioner cannot establish the necessary "causal relationship"

between any library restriction and "the lateness of his [*habeas*] filing."  Valverde, 224 F.3d at

134; see also Harper, 648 F.3d at 137-38 (where obstacle impeding timely *habeas* filing did not

exist throughout the entire statutory limitations period, a court may conclude that the obstacle

did not cause the lateness of the filing).  Finally, Petitioner's failure to describe the efforts he

undertook to access the library during this period prevents this Court from determining that he

acted with the kind of "reasonable diligence" necessary to warrant an equitable toll.  Harper, 648

F.3d at 138 (internal quotation marks omitted); see Baldwin Cnty. Welcome Ctr. v. Brown, 466

U.S. 147, 151 (1984) (per curiam) ("'One who fails to act diligently cannot invoke equitable

principles to excuse that lack of diligence."); see also, e.g., Ruiz, 566 F. Supp. 2d at 341 (noting

petitioner's failure to identify "the efforts, if any, he undertook to address his lack of access to

the law library").  Equitable tolling is not warranted.

### iii.    <u>Conclusion As To Tolling</u>

As detailed above, as a result of statutory tolling pursuant to 28 U.S.C. § 2244(d)(2),

Petitioner had until July 25, 2012 to file a timely federal *habeas* petition.

## IV. <u>CONCLUSION</u>

Petitioner filed his petition on August 7, 2012, thirteen (13) days after the one-year

AEDPA limitations period expired.  The petition is therefore untimely.  I conclude–and

respectfully recommend that Your Honor should conclude–that Respondent's motion to dismiss

be should therefore be **GRANTED**, and the petition **DISMISSED**.

Dated: March 1, 2013
      White Plains, New York

Respectfully Submitted,

Paul E. Davison
United States Magistrate Judge

## <u>NOTICE</u>

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil
Procedure, the parties shall have fourteen (14) days, plus an additional three (3) days, or a total
of seventeen (17) days, from service of this Report and Recommendation to serve and file
written objections.  See also Fed. R. Civ. P. 6(a), (b), (d).  Such objections, if any, along with
any responses to the objections, shall be filed with the Clerk of the Court with extra copies
delivered to the chambers of the Honorable Edgardo Ramos, at the Hon. Charles L. Brieant, Jr.
Federal Building and United States Courthouse, 300 Quarropas Street, White Plains, New York
10601, and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later
appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Ramos.

A copy of the foregoing Report and Recommendation has been sent to the following:

The Honorable Edgardo Ramos
The Honorable Charles L. Brieant, Jr. Federal Building and United States Courthouse
300 Quarropas Street
White Plains, New York  10601

Philip Caldarola, *pro se*
05-A-1969
Sing Sing Correctional Facility
354 Hunter Street
Ossining, New York 10562

Lisa Marie Denig, Esq.
Office of the Westchester County District Attorney
111 Dr. Martin Luther King, Jr. Boulevard
White Plains, New York 10601

APPENDIX



**4/5/2005:** *Judgment of Conviction and Sentence*

**11/7/2007:** *Appellate Division Affirms Judgment of Conviction*

**7/8/2008:** *Court of Appeals Denies Leave to Appeal Judgment of Conviction*

**AEDPA Begins to Run**
**10/7/2008**      **10/6/2008:** *Conviction Becomes Final*

**149 DAYS**

**AEDPA is Tolled**      **3/5/2009:** *First § 440 Motion is Filed*

**8/18/2009:** *Westchester County Court Denies First § 440 Motion*

**11/5/2009:** *Appellate Division Denies Leave to Appeal First § 440 Motion*

**AEDPA Re-Starts**
**1/23/2010**      **1/22/2010:** *Appellate Division Denies Motion to Reargue*

**3/11/2010:** *Court of Appeals Dismisses Appeal of Appellate Division's Denial of Motion to Reargue*

**96 DAYS**

**AEDPA is Tolled**      **4/29/2010:** Error Coram Nobis *Petition is Filed*

**9/28/2010:** *Appellate Division Denies* Error Coram Nobis *Petition*

**AEDPA Re-Starts**
**10/29/2010**      **10/28/2010:** *Deadline to Seek Leave to Appeal the Appellate Division's Denial of the* Error Coram Nobis *Petition with the Court of Appeals Expires*

**17 DAYS**

**AEDPA is Tolled**      **11/15/2010:** *Second § 440 Motion is Filed*

**4/28/2011:** *Westchester County Court Denies Second § 440 Motion*

**AEDPA Re-Starts**
**4/13/2012**      **4/12/2012:** *Appellate Division Denies Leave to Appeal Second § 440 Motion*

**6/29/2012:** *Court of Appeals Dismisses Appeal of Appellate Division's Denial of Leave to Appeal Second § 440 Motion*

**116 DAYS**

**Petition FILED**      **8/7/2012:** *Federal* Habeas *Petition is Filed*