```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```
```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC# _____
DATE FILED: 9/6/13
```

------------------------------------------------------------x

PHILIP CALDAROLA,

                Petitioner,

v.

MICHAEL CAPRA,

                Respondent.

------------------------------------------------------------x

**OPINION AND ORDER**

12 Civ. 6133 (ER)

RAMOS, D.J.:

Philip Caldarola (the "Petitioner"), an incarcerated *pro se* litigant, filed this Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on August 7, 2012.[1] Doc. 1. On September 25, 2012, the case was reassigned to this Court, Doc. 3, and on September 26, 2012, it was referred to the Honorable Paul E. Davison, United States Magistrate Judge. Doc. 4

On January 18, 2013, Respondent filed a Motion to Dismiss the instant Petition as time-barred. Doc. 12. On February 5, 2013, Petitioner filed his opposition to the Motion to Dismiss. Docs. 15, 16. Respondent replied by letter dated February 13, 2013. Doc. 17.

On March 1, 2013, Judge Davison issued his Report and Recommendation (the "Report"), finding that the Petition was filed thirteen (13) days after the Antiterrorism and Effective Death Penalty Act ("AEDPA") one-year limitations period had expired, and that the Petition should therefore be dismissed as untimely. Doc. 18. Before the Court is Petitioner's Objections Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) (the "Objections"), filed April 10, 2013, to the Report. Doc. 21. Familiarity with the prior proceedings, the Report, and the issues

---

[1] Although the *pro se* Petition was not received by the clerk's office until August 9, 2012, because the Petition is dated August 7, 2012, the Court accepts that date as the filing date pursuant to the "prison mailbox rule." *See Noble v. Kelly*, 246 F.3d 93, 97 (2d Cir. 2001) (under the prison mailbox rule, when a prisoner is proceeding *pro se*, his or her petition for habeas corpus is considered filed as of the date it was given to prison officials for forwarding to the clerk of the court) (per curiam).

presented therein is presumed.

## I. Standard of Review

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). Parties may raise "specific," "written" objections to the report and recommendation "[w]ithin fourteen days after being served with a copy." *Id.*; *see also* Fed. R. Civ. P. 72(b)(2). A district court reviews de novo those portions of the report and recommendation to which timely and specific objections are made. 28 U.S.C. § 636(b)(1)(C); *see also United States v. Male Juvenile (95-CR-1074)*, 121 F.3d 34, 38 (2d Cir.1997). The district court may adopt those parts of the report and recommendation to which no party has timely objected, provided no clear error is apparent from the face of the record. *Lewis v. Zon*, 573 F. Supp. 2d 804, 811 (S.D.N.Y. 2008). The district court will also review the report and recommendation for clear error where a party's objections are "merely perfunctory responses" argued in an attempt to "engage the district court in a rehashing of the same arguments set forth in the original petition." *Ortiz v. Barkley*, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) (citations and internal quotation marks omitted).

The objections of *pro se* parties are "generally accorded leniency" and should be construed to "raise the strongest arguments that they suggest." *Milano v. Astrue*, No. 05 Civ. 6527 (KMW) (DCF), 2008 WL 4410131, at *2 (S.D.N.Y. Sept. 26, 2008) (citations and internal quotation marks omitted), *aff'd*, 382 F. App'x 4 (2d Cir. 2010). However, "even a *pro se* party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal, such that no party be allowed a second bite at the apple by simply relitigating a prior argument." *Pinkney v. Progressive Home Health Servs.*, No. 06 Civ.

5023 (LTS) (JCF), 2008 WL 2811816, at *1 (S.D.N.Y. July 21, 2008) (citation and internal quotation marks omitted), *aff'd*, 367 F. App'x 210 (2d Cir. 2010).

## II. Petitioner's Objections

### a. Objection Based Upon 28 U.S.C. § 2244(d)(1)(D)

Petitioner objects to Judge Davison's rejection of his argument that under 28 U.S.C. § 2244(d)(1)(D), the one-year statute of limitations should be deemed to run from 2010 when he first discovered new information relating to his plea negotiations.[2]  The Report summarized Petitioner's argument as follows:  Petitioner's counsel was ineffective for failing to inform him that the prosecution offered him a six-year plea bargain, that this six-year offer remained on the table until trial, and that Petitioner claims that he only discovered that he was misinformed about this available plea offer after his father discovered, in 2010, a copy of a letter from counsel to Petitioner dated February 27, 2006.[3]  Report at 16.  Judge Davison rejected this argument on several bases.  First, he found that Petitioner knew of the six-year plea offer at least as of September 10, 2004, as it was specifically discussed on the record and rejected by Petitioner during a pretrial conference.  *Id.*  That Petitioner more recently, and in retrospect, concluded that this offer was more favorable than was his decision to proceed to trial does not trigger the statute of limitations provision provided by § 2244(d)(1)(D).  *Id.*  Second, Judge Davison concluded that even if the 2006 letter included new information, "the fact that the letter was lost sometime between 2007 and 2010, rediscovered after Petitioner's father located a copy, and then presented

---

[2] 28 U.S.C. § 2244(d)(1)(D) fixes as a starting point for the one-year limitations period "the date on which the factual predicate of the . . . claims presented could have been discovered through the exercise of due diligence."

[3] The 2006 letter is attached to Petitioner's Objections as Exhibit A. The letter states in relevant part:  "I still believe that the early threats of the existence of a video were a strategy to scare us into taking a plea.  If you remember, at that time, the DA was talking about 'double digits' as to jail time.  If they had a video showing you at the apartment stairwell, wearing the jacket they believe you were wearing at the scene, with a bullet hole through it, they would have produced it.  We would have never shown such a video to the jury on our case, even if you were not wearing a jacket, because it would have ultimately helped the DA more than us for many reasons."

3

in support of Petitioner's second motion to vacate his conviction, does not show that Petitioner acted with due diligence when he first received the letter in 2006." *Id.* at 16-17.

Petitioner objects to Judge Davison's use of the 2006 letter as the "factual predicate" upon which Petitioner's § 2244(d)(1)(D) argument is based.  Petitioner contends that "[a]t no point in time did [he] maintain that the 2006 letter was the factual predicate"; rather, "[t]he newly discovered evidence of *2010*, filed in Petitioner's 2010 section 440.10 motion, is the premise for the independent claim asserted."  Objections at 1, 5 (emphasis added).  The "newly discovered evidence of 2010" to which Petitioner refers is an alleged meeting between Petitioner's father and an "anonymous" attorney, during which the attorney advised Petitioner's father that "the plea offer for [Petitioner] was a fair plea deal of six years imprisonment and that the plea did not exceed single digits."  Objections at Ex. B (Affidavit of Nicholas Caldarola). Petitioner argues that this newly-discovered information demonstrates that his trial counsel "misadvised him with false representations of what the available plea offers were," Objections at 2, and clearly contradicts counsel's 2006 letter stating that "the DA was talking about 'double digits' as to jail time."  *Id.* at Ex. A.

Petitioner does not dispute that he rejected a six-year plea offer on September 10, 2004; rather, he contends that after doing so, his counsel misrepresented to him that the six-year offer was "off-the-table" and advised him that the offer was thereafter ten years.  Affirmation in Opp. to Mot. to Dismiss ("Pet.'s Aff. Opp.") (Doc. 15) at 6.  Petitioner further alleges that shortly before trial, the plea offer was reduced from the "longstanding ten-year offer to a first-time five-year offer."  Petition (Doc. 1) at 34.[4]  After being advised by counsel that the "dramatic reduction" demonstrated "that the prosecution's case was extremely flawed," Petitioner rejected

---

[4] All citations to the Petition herein refer to the ECF pagination, rather than the page numbers included by Petitioner.

the five-year offer and proceeded to trial.  *Id.*

Petitioner contends that the "newly discovered evidence" (i.e., his father's 2010 conversation with an "anonymous" attorney) demonstrates that his counsel's representations that the plea offers were in the "double digits" following his rejection of the six-year offer were false.  Rather, according to Plaintiff, the plea offers were "always six years until the pretrial offer of five years was placed on the table," and that contrary to his counsel's representations, the plea offer "never exceeded 'single digits.'"  Pet.'s CPL § 440.10 Mot. (Doc. 14-12) at 2.  Petitioner further contends that his counsel's false representations (i.e., his representations that the government's plea offers were in the "double digits") caused Petitioner to reject the five-year plea offer made shortly before trial upon his counsel's advice that the sharp reduction from ten years to five showed that the prosecution's case was a "bluff" and was "very flawed."  Objections at 3.  According to Petitioner, had he been aware that the prosecution's plea offers were always six years, and had not been dramatically reduced from the "longstanding ten-year offer," he would have accepted the five-year offer.  Petition (Doc. 1) at 34-35, Objections at 6.

Moreover, Petitioner argues that there was no way for him to have known that his attorney's prior representations regarding the government's plea offers were false and misleading until the information was provided to his father by a "compassionate Westchester County attorney," and that "[t]here is no reasonably diligent way that any defendant could obtain information like that, or know that he was being lied to by his attorney, absent . . . having [the] information 'dropped on your lap,' as was the case . . . herein."  Objections at 6-7.

Accordingly, Petitioner objects to Judge Davison's analysis of the 2006 letter as the "factual predicate" on which Petitioner's § 2244(d)(1)(D) argument is based, and argues that the proper "factual predicate" under the statute is the information discovered by Petitioner's father in

2010.[5]  Because the Report does not address Petitioner's claim that his father's June 2010 conversation with an "anonymous" Westchester attorney constituted "the factual predicate" for the claims raised in the instant Petition, the Court addresses the argument below.[6]

### i. Plaintiff is Not Entitled to a Later Starting Point Under Section 2244(d)(1)(D) for his Ineffective Assistance of Counsel Claim

The Second Circuit recently held that the term "factual predicate," as used in § 2244(d)(1)(D), "consists only of the 'vital facts' underlying the claim." *Rivas v. Fischer*, 687 F.3d 514, 535 (2d Cir. 2012) (citations omitted).  Moreover, the facts "vital to a habeas claim" are "those without which the claim would necessarily be dismissed under Rule 4 of the Rules Governing § 2254 Cases in the United States District Courts (requiring a district judge to dismiss a petition '[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief') or Rule 12(b)(6) of the Federal Rules of Civil Procedure (allowing for dismissal of a civil complaint where the plaintiff has 'fail[ed] to state a claim upon which relief can be granted')." *Id.*

Here, Petitioner avers that his father's 2010 conversation provides the factual predicate for his ineffective assistance of counsel claim because it establishes that Petitioner's counsel misrepresented to him that the prosecution's plea offers were in the "double digits," when in reality, the plea offers were consistently six years.  The Supreme Court recently confirmed that the *Strickland v. Washington*, 466 U.S. 668 (1984), analysis applies in the context of plea

---

[5] The Court notes that the Petition states that "[t]he factual predicate for the second motion is in 2010" under the heading "Timeliness of Petition."  Petition (Doc. 1) at 6.

[6] Petitioner's father's affidavit states that the newly discovered information was related to him in June 2010, but does not provide an exact date.  Objections at Ex. B.  Assuming that the alleged conversation took place on the last day of June 2010, and that date were used as the start date for the one-year limitations period under § 2244(d)(1)(D), Petitioner's instant habeas petition would be timely.

negotiations.[7] *Lafler v. Cooper*, —U.S. —, 132 S.Ct. 1376, 1384, 182 L.Ed.2d 398 (2012). An attorney's failure to convey a plea offer will constitute inadequate performance under the first prong of the *Strickland* test. *United States v. Brown,* 623 F.3d 104, 112 (2d Cir.2010) ("[C]ounsel's failure to convey a plea offer falls below an objective standard of reasonableness and thus satisfies *Strickland's* first prong.") (citing *Pham v. United States,* 317 F.3d 178, 183 (2d Cir.2003) ("[T]here is no dispute that failure to *convey* a plea offer is unreasonable performance."))). In order to satisfy the second prong of the *Strickland* test, a petitioner must then show that "the outcome of the plea process would have been different with competent advice." *Lafler,* 132 S.Ct. at 1384.

The factual scenario underlying Petitioner's ineffective assistance of counsel claim is unusual, as he does not allege that his counsel failed to convey a plea offer to him which he would have likely accepted. Rather, Petitioner's claim is based on the allegation that after Petitioner rejected a six-year plea offer on September 10, 2004, his counsel misrepresented to him that the six-year offer was "off-the-table" and advised him that the offer was thereafter ten years. Pet.'s Aff. Opp. 6. Petitioner further contends that because of his attorney's alleged misrepresentations, he rejected a "first-time five-year offer" a week-and-a-half before trial. Petition (Doc 1) at 34. Accordingly, under the factual circumstances as presented by Petitioner, to prevail on his ineffective assistance claim, Petitioner would need to establish that at some point beginning after September 10, 2004 until a week-and-a-half before trial, the prosecution's

---

[7] To prevail on an ineffective assistance claim under *Strickland,* a criminal defendant must show that: (1) counsel's performance "fell below an objective standard of reasonableness" in light of prevailing professional norms, *id.* at 687-88, and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694. A court may reject an ineffective assistance of counsel claim for failure to satisfy either prong of the *Strickland* standard, without reaching the other. *See id.* at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

plea offers *never* exceeded single digits, and that had Petitioner known that the prosecution's plea offers were not in the double-digits range during the relevant time period, he would have accepted the five-year offer made shortly before trial.

Petitioner's claim fails on both of these points. First, Petitioner's assertion that his counsel's representation in the 2006 letter that "the DA was talking about 'double digits' as to jail time" was false, rests solely on the affidavit of Petitioner's father, Nicholas Caldarola.[8] Putting aside the fact that the affidavit relies entirely upon hearsay within hearsay (i.e., out-of-court statements made to Petitioner's father by an "anonymous" attorney regarding that attorney's out-of-court statements with "an Assistant District Attorney and a Judge"), it simply does not contradict Petitioner's counsel's statement in the 2006 letter as to the status of the prosecution's plea offers.[9] Instead, it merely states that *at some point in time*—without any indication as to the exact time period—"the plea offer for Philip Caldarola was . . . six years imprisonment and that the plea did not exceed single digits." Objections at Ex. B. That statement is undoubtedly true, as the record is clear that on September 10, 2004, Petitioner rejected a six-year plea offer during a pretrial conference. Doc. 14-18 (Sept. 10, 2004 transcript). Petitioner's father's affidavit does not indicate that the plea offers were *always* six years or *never*

---

[8] Although in his second CPLR § 440.10 motion, Petitioner apparently attached an affidavit authored by himself describing how the alleged newly-discovered information "was related to him," Pet.'s CPL § 440.10 Mot. (Doc. 14-12) at 2, that affidavit was not provided to this Court. Additionally, Petitioner contends in the same motion that Assistant District Attorney John O'Rourke "would solidify that [Petitioner's counsel's] admission is . . . a false representation of the plea offers," *id.*; however, Petitioner has not submitted an affidavit or any other statement by Mr. O'Rourke corroborating Petitioner's father's testimony.

[9] The 2006 letter does not specifically indicate at what period of time the plea offers were in the "double digits." Petitioner contends, and the Court will assume, that the time period to which his counsel is referring in the 2006 letter is "approximately September 2004 leading up to a week and a half before trial." Petition (Doc. 1) at 32. The Court notes, however, that based on the record presented, the time period discussed in the letter could just as plausibly have referred to the time *prior to* September 2004. Specifically, the phrase "at that time" in counsel's letter refers to "the *early threats* of the existence of a video" in the previous sentence. Objections at Ex. A (emphasis added). The Petitioner was arrested in February 2004. Doc. 14-10 at 2, 7. Thus, the "early" time period of the prosecution extended back to February 2004.

in the double digits.  Accordingly, contrary to Petitioner's contention, his father's affidavit simply does not establish that counsel's representation in the 2006 letter that the prosecution's plea offers were in the "double digits" was false.  Moreover, in its opposition to Petitioner's second CPL § 440.10 motion, the government asserted that after Petitioner rejected the six-year plea offer on September 10, 2004, and throughout the remainder of the prosecution, "on-going negotiations continued" and the "plea offer changed frequently and would range between 5 to 10 years and may have even been higher than 10 years on several occasions."  Doc. 14-13 at 3 n.2.  Petitioner contends that the government's reply concerning the status of the plea negotiations during the relevant time frame "corroborates" his argument.  Objections at 3.  To the contrary, the government's assertion that the plea offers ranged between five-to-ten years following Petitioner's rejection of the six-year plea offer on September 10, 2004 actually *supports* Petitioner's counsel's contention in the 2006 letter that the "DA was talking about 'double digits' as to jail time."[10]

   Moreover, even assuming *arguendo* that the "newly discovered evidence" did in fact demonstrate that Petitioner's counsel's representations were false, Petitioner's claim would nevertheless fail, as he has failed to satisfy the "prejudice" prong of the *Strickland* test.  The Supreme Court has held that in circumstances in which the ineffective advice "led not to an offer's acceptance but to its rejection," and the prejudice alleged is "[h]aving to stand trial," a defendant must show that "but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of

---

[10] Although Petitioner contends that Judge Kenneth Lange informed Petitioner at the September 10, 2004 conference that he should consider the six-year plea offer a "'gift' and not to be offered again," Objections at 3, the Court's review of the September 10 transcript indicates that no such remarks were made on the record.  Even if Judge Lange had made such a statement, however, it would serve to undercut Petitioner's position, not support it.

intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler,* 132 S.Ct. at 1385.

Here, Petitioner contends that he would have accepted a plea offer of "anywhere from five to seven years imprisonment[] during the months prior to trial" had he been aware that the government's plea offers were not previously in the "double digits."  Pet.'s CPL § 440.10 Mot. (Doc. 14-12) at 3.  However, the record is clear that Petitioner knowingly and voluntarily rejected a six-year plea offer in open court on September 10, 2004.  Accordingly, even if Petitioner falsely believed that the government's plea offers were in the ten-year range following the September 10 conference, in assessing the strength of the government's case several months later when deciding whether to accept the five-year offer or proceed to trial, Petitioner was well aware that the government had previously made a six-year plea offer.  Petitioner's contention that he decided to go to trial based on the assumption that the government's dramatic reduction from the "longstanding ten-year offer to a first-time five-year offer" indicated that it had a weak case is flatly belied by the undisputed fact that Petitioner *knew* that the government had previously made a six-year offer, which Petitioner refused.  Thus, even assuming Petitioner satisfied the first prong of the *Strickland* test, he would still fail to state a claim for ineffective assistance of counsel based on the "newly discovered evidence," as he has failed to show that "there is a reasonable probability" that he would have accepted the five-year plea offer.

Accordingly, because the "newly discovered facts" upon which Petitioner relies are insufficient to state a claim for ineffective assistance of counsel that is plausible on its face, his proposed starting point for purposes of § 2244(d)(1)(D) is not justified.

### III. The Petition is Untimely

With respect to the balance of the Report to which Petitioner does not specifically object, the Court reviews the Report for clear error.[11] *Lewis*, 573 F. Supp. 2d at 811. The Court finds none, and adopts Judge Davison's finding that the AEDPA limitations period began to run on October 6, 2008, Petitioner's deadline to file a writ of *certiorari* in the United States Supreme Court, Report at 10, and that as a result of statutory tolling pursuant to 28 U.S.C. § 2244(d)(2), Petitioner had until July 25, 2012 to file a timely federal *habeas* petition. Because Petitioner filed the instant petition on August 7, 2012, thirteen days after the one-year AEDPA limitations period expired, the Petition is untimely.

### IV. Conclusion

Accordingly, having reviewed the Petitioner's and the Respondent's papers, as well as all of the other documents on file in this matter, the Court ADOPTS Judge Davison's Report and Recommendation. The Petition is hereby DISMISSED.

The Court further concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right, 28 U.S.C. § 2253(c)(2), and accordingly a certificate of appealability is DENIED.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

---

[11] To the extent that Petitioner objects to Judge Davison's conclusion that the claims raised in Petitioner's first CPL § 440.10 motion do not involve newly-discovered facts supporting a delayed starting point under § 2244(d)(1)(D), Objections at 3-4, the Court rejects Petitioner's objection. The factual predicate of Petitioner's claim that his counsel misinterpreted the elements of the affirmative defense of innocent possession of a weapon was known to Petitioner at the time of trial. That he may later have concluded that counsel's performance was deficient does not support application of § 2244(d)(1)(D). Report at 13.

For the foregoing reasons, Defendant's Motion to Dismiss is GRANTED. The Clerk of the Court is respectfully directed to terminate the motion and dismiss the Complaint. Docs. 1, 6.

SO ORDERED.

Dated:   September 5, 2013
         New York, New York

                                                    _____
                                                    Edgardo Ramos, U.S.D.J.